TO: Clerk's Office
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

APPLICATION FOR LEAVE
TO FILE DOCUMENT UNDER SEAL

*********************************
UNITED STATES OF AMERICA

- against -

GUOCHUN HE et al.

22 MJ 1137
Docket Number

*********************************

SUBMITTED BY: Plaintiff____  Defendant____  DOJ___ ✔
Name: Meredith A. Arfa
Firm Name: U.S. Attorney's Office, EDNY
Address:   271 Cadman Plaza East
           Brooklyn, New York 11201
Phone Number: (718) 254-6025
E-Mail Address: meredith.arfa@usdoj.gov

INDICATE UPON THE PUBLIC DOCKET SHEET: YES___  NO ✔
If yes, state description of document to be entered on docket sheet:

A) If pursuant to a prior Court Order:
Docket Number of Case in Which Entered:____
Judge/Magistrate Judge:____
Date Entered:____

B) If a new application, the statute, regulation, or other legal basis that
authorizes filing under seal

Defendants at large.

ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE,
AND MAY NOT BE UNSEALED UNLESS ORDERED BY
THE COURT.

DATED:  Brooklyn                    , NEW YORK

Ramon E. Reyes, Jr.  Digitally signed by Ramon E. Reyes, Jr.
                     Date: 2022.10.20 20:27:12 -04'00'

U.S. MAGISTRATE JUDGE

RECEIVED IN CLERK'S OFFICE ____  DATE

MANDATORY CERTIFICATION OF SERVICE:
A.) ___ A copy of this application either has been or will be promptly served upon all parties to this action. B.) ____ Service is excused by 31 U.S.C. 3730(b), or by
the following other statute or regulation: ____; or C.) ✔ This is a criminal document submitted, and flight public safety, or security are significant concerns.
(Check one)

10/20/2022        Meredith A. Arfa  Digitally signed by Meredith
DATE                                A. Arfa
                                    Date: 2022.10.20 15:54:39
                                    -04'00'
                  SIGNATURE

DMP:AAS/MAA
F. #2021R01036

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

    - against -

GUOCHUN HE, also known as "Dong He" or
   "Jacky He," and
ZHENG WANG, also known as "Zen Wang,"

           Defendants.

– – – – – – – – – – – – – –X

F I L E D   U N D E R   S E A L

C O M P L A I N T   A N D
A F F I D A V I T   I N   S U P P O R T
O F   A R R E S T   W A R R A N T S

Docket No. 22 MJ 1137
(18 U.S.C. §§ 1512(c)(2) and
1956(a)(2)(A))

EASTERN DISTRICT OF NEW YORK, SS:

        Thomas M. Ryder, being duly sworn, deposes and states that he is a Supervisory

Special Agent with the Federal Bureau of Investigation, duly appointed according to law and

acting as such.

OBSTRUCTION OF AN OFFICIAL PROCEEDING

        In or about and between January 2019 and the present, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants GUOCHUN HE, also known as "Dong He" or "Jacky He," and ZHENG WANG,

also known as "Zen Wang," together with others, did knowingly, intentionally and corruptly

attempt to obstruct, influence and impede an official proceeding, to wit: a criminal prosecution in

the Eastern District of New York of a global telecommunications company ("Company-1")

based in the People's Republic of China ("PRC").

        (Title 18, United States Code, Section 1512(c)(2))

MONEY LAUNDERING

In or about November 2021, within the Eastern District of New York and elsewhere, the defendant GUOCHUN HE, also known as "Dong He" or "Jacky He," together with others, did knowingly and intentionally transport, transmit and transfer monetary instruments and funds, to wit: approximately $41,000 in Bitcoin, from one or more places outside the United States to and through one or more places inside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit: obstruction of justice, in violation of Title 18, United States Code, Section 1512(c)(2).

(Title 18, United States Code, Section 1956(a)(2)(A))

MONEY LAUNDERING

In or about October 2022, within the Eastern District of New York and elsewhere, the defendant GUOCHUN HE, also known as "Dong He" or "Jacky He," together with others, did knowingly and intentionally transport, transmit and transfer monetary instruments and funds, to wit: approximately $20,000 in Bitcoin, from one or more places outside the United States to and through one or more places inside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit: obstruction of justice, in violation of Title 18, United States Code, Section 1512(c)(2).

(Title 18, United States Code, Section 1956(a)(2)(A))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I have been a Special Agent with the Federal Bureau of Investigation (FBI) since August 2014 and am currently a Supervisory Special Agent assigned to the New York City Field Office.   As a Special Agent, I have investigated numerous matters during the course of which I have conducted physical surveillance, interviewed witnesses, executed court-authorized search warrants and used other investigative techniques to secure relevant information.   I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of the investigative file, and from my review of reports of other law enforcement officers involved in the investigation.

I.   The Defendants

2.      The defendant GUOCHUN HE, also known as "Dong He" or "Jacky He," is a citizen of the PRC.   Based on the information set forth below, I assess that HE is an intelligence officer of the PRC conducting foreign intelligence operations targeting the United States, on behalf of the PRC government and for the benefit of Company-1.   The defendant ZHENG WANG, also known as "Zen Wang," is a citizen of the PRC who is known to me to be HE's co-worker, and whom I assess also to be an intelligence officer of the PRC conducting foreign intelligence operations targeting the United States, on behalf of the PRC government and

---

[1]  Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

for the benefit of Company-1.   Photographs of HE and WANG, respectively, are set forth

below:



II.  Background Regarding the Investigation and Prosecution of Company-1

3.     Company-1 is a global telecommunications company headquartered in the

PRC which conducts business across the world and in the United States.   Company-1 maintains

several affiliates in the United States.   Company-1 is a defendant in a pending prosecution in

the Eastern District of New York ("EDNY").   In a February 2020 press release announcing the

unsealing of a superseding indictment against Company-1, the U.S. Department of Justice

indicated that the investigation related to Company-1 is ongoing.

III.     The Scheme to Obstruct the Investigation and Prosecution of
          Company-1

A.  Overview of Conduct

4.     In their capacity as intelligence officers working for the PRC government,

HE and WANG attempted to direct a person they believed they had recruited as an asset who is

employed by a U.S. government law enforcement agency ("GE-1") to obtain confidential

information regarding witnesses, trial evidence and potential new charges to be brought against

Company-1 for the purpose of obstructing justice.    HE paid GE-1 approximately $61,000 for

such information.[2]

       5.      HE and WANG first cultivated their relationship with GE-1 in or about

February 2017.    GE-1 subsequently began working as a double agent for the U.S. government.

Since becoming a double agent, GE-1's continued contact with HE and WANG occurred under

the supervision of the FBI.    Pursuant to directives from the FBI, GE-1 provided various kinds of

information to HE and WANG at their request, including purportedly sensitive information about

the U.S. government's criminal case against Company-1.    While acting under the supervision of

the FBI, GE-1 received payment from HE and WANG for the information he/she had provided,

some of which has purported to contain sensitive, non-public U.S. government trial information.

       6.      As of October 2021, HE and WANG had provided GE-1 with payment of

approximately $14,000, in addition to jewelry worth approximately $600, for purported sensitive

U.S. government information.    Specifically, and unrelated to this matter, GE-1 received: (1) a

Western Union wire for $2,000 in September 2017; (2) $3,000 in cash during an in-person

meeting with HE and WANG; and (3) $9,000 in cash and jewelry in September 2018.

       7.      Beginning in or about January 2019, when charges were first announced

against Company-1, HE and WANG repeatedly sought from GE-1 non-public information

regarding the pending criminal prosecution of Company-1, as well as any ongoing investigation

of Company-1, in an effort to interfere with the prosecution and the ongoing investigation.

Beginning in the summer of 2021, HE and WANG's efforts to interfere with the pending

---

[2]  Certain references to conduct by GE-1 are to conduct by law enforcement agents acting on
behalf of GE-1, such as communications sent on GE-1's behalf and receipt of Bitcoin payment on
GE-1's behalf.

criminal prosecution and ongoing investigation related to Company-1 escalated.   In or about September 2021, HE tasked GE-1 with providing information about meetings that GE-1 was purportedly having with members of the prosecution team at the U.S. Attorney's Office for EDNY to strategize for the jury trial in the prosecution of Company-1.   In October 2021, in response to HE's request for documents and records from the prosecution team, GE-1 passed to HE a single page document that appeared to be classified as "SECRET"[3] and that purported to discuss a potential plan to charge and arrest two current Company-1 principals residing in the PRC.   GE-1 falsely indicated to HE and WANG that he/she surreptitiously photographed the document during a meeting with federal prosecutors.   The document, if authentic, could be used by Company-1 to obstruct the ongoing criminal prosecution and government investigation.[4] HE paid GE-1 approximately $41,000 in Bitcoin for that single page.   In December 2021, after the document was passed to HE, in discussions concerning the document, HE informed GE-1 that Company-1 "demanded to communicate with [GE-1] directly" but that HE had "refused it" because "it's too dangerous."[5]

8.     In communications with HE and WANG, GE-1 has repeatedly indicated his/her knowledge and expectation that the materials he/she passed would be shared with

---

[3]  Material classified at the "SECRET" level, if disclosed without authorization, would be expected to cause serious damage to the national security of the United States.

[4]  The two documents described in this affidavit that GE-1 obtained and passed to HE and WANG were actually prepared by the government for purposes of this investigation and were neither taken from any document related to the prosecution of Company-1 nor actually classified as "SECRET."   Furthermore, the information set forth below that was provided by GE-1 to HE and WANG does not accurately recount actual meetings, communications or other strategy related to the prosecution of Company-1.

[5]  Unless otherwise noted, all communications between GE-1, HE and WANG set forth below were made using an encrypted messaging program.   All messages include original grammar, spelling and punctuation.

Company-1, and HE and WANG never denied that the materials they received from GE-1 would be shared with Company-1.   In fact, regarding the purportedly classified page they received from GE-1 regarding Company-1, HE explained, "[Company-1] didn't give me specifically feedback now yet [about the document], but they are obviously interested in it, and my boss and they need further information."   After receiving the document, HE and WANG requested information regarding cooperating witnesses working with the U.S. government in the prosecution of Company-1.

   B.   The Defendants First Seek Information Regarding the Prosecution of Company-1

        9.      The defendants' first efforts to obtain non-public information regarding the prosecution of Company-1 from GE-1 began in or about January 2019, shortly after charges were unsealed against Company-1.[6]   On or about February 1, 2019, several days after the indictment charging Company-1 was first unsealed, HE sent GE-1 a message containing two hyperlinks to public news articles about the charges.   HE and GE-1 then exchanged the following messages:

        [HE]: Do you have time to use a public phone call me in this two days?

        [GE-1]: What do you mean by a public phone? Do you mean like a pay phone on the street?

        [HE]: yeah. the pay phone on the street. is it convience for you?

        [GE-1]: I really don't know if they exist anymore.

        [HE]: can you check it exist or not tomorrow. if still exist. just tell me and I will tell you the phone number that we can make a phone call in suitable time.

---

[6]  In or about January 2019, GE-1 sent a message to HE in which GE-1 stated, in sum and substance, that GE-1 was having financial difficulties.   HE responded: "let me see if there are something I can do for you."

10.     Several days later, on or about February 4, 2019, GE-1 spoke with WANG using a public phone kiosk.   During the call, WANG expressed interest in GE-1 obtaining non-public information about the prosecution of Company-1.   During the conversation, WANG expressed interest in finding out information regarding "the U.S. side" of the charges against Company-1.   When GE-1 indicated that he/she lacked direct access to such information, WANG suggested that he/she consult with a "friend" or "maybe, you know, you know in your own ways maybe [unintelligible] you see you have the-the way to find."

11.     On or about February 14, 2020, several days after a superseding indictment charging Company-1 was unsealed, HE wrote GE-1: "And you know, yesterday, the US department of justice make a new lawsuit just aim to [Company-1], can you talk about this with your ex-college [colleague] who work for department of justice? Evidencees, next measures, or communication . . . , anything about this are good, Thank you very much," using an abbreviation for Company-1.   When GE-1 responded that GE-1 did not know what the abbreviation meant, HE explained he was referring to Company-1.   HE also wrote: "You can learn something about this case from Internet before start" and that "[t]he latest lawsuit yesterday is made by federal court of Brooklyn NY."

12.     On or about February 17, 2020, HE wrote to GE-1, following up to see if there had been any progress in locating confidential information regarding the case against Company-1: "So, dear friend, did you get anything about it?"   GE-1 responded that he/she had not been at work yet.   HE responded, "take it easy, happy holiday, and waiting for your further information."

13.     In or about August 2021, GE-1 wrote to HE asking for direction about what information to gather: "Is there anything specific that would be helpful to know about?"

8

and "[Company-1], still?"    HE responded, "Yes, [Company-1] still, and all about the trade talk,
attitude, analysis, potential measures, targets, offers...are helpful, and of cause the specific cases
of sanction aim to China enterprises are also good."

      C.   <u>The Defendants Seek and Obtain Information to Obstruct the EDNY Prosecution</u>

        14.    In the fall of 2021, GE-1 falsely informed the defendants that he/she was
meeting with members of the EDNY prosecution team to prepare for trial against Company-1.
In response, the defendants directed GE-1 to seek non-public information from the EDNY
prosecution team, including witness lists, information about cooperating witnesses and
information about forthcoming charges against Company-1.    GE-1 repeatedly indicated his/her
understanding that the information he/she was passing would ultimately go to Company-1, and
HE and WANG never denied that they were sharing the information with Company-1.    To the
contrary, HE expressed that the information was of great interest to Company-1.    Receipt of the
identities of cooperating witnesses far in advance of when the defense would otherwise be
entitled to such information would be advantageous to the defense and would provide Company-
1 with an opportunity to tamper with witnesses.

        15.    On or about and between September 3, 2021, and September 6, 2021, GE-
1 and HE exchanged messages.    Initially, GE-1 wrote to HE that "I think I might be able to
volunteer to help a colleague with something related to [Company-1].    No promises, but I'm
going to try to get involved."    HE responded: "OK, waiting for you!"    GE-1 responded: "Ok
I'll see what I can do.    Is this something you want me to try to do?    If so, is there anything
specific I should try to find out?"    HE then replied: "Everything about this is good."

        16.    On or about September 14, 2021, HE wrote to GE-1: "[H]ow about your
work of [Company-1] issues? Did you find something meaningful?"    GE-1 responded: "I

haven't yet.   I really need you to be specific with what you need me to focus on.   I'm limited in what I can look for and the time I can spend on this and need some guidance from you on what to prioritize looking for.   I can probably get something related to the [Company-1] case but I need to know the highest priority of what I should try to get."

17.   On or about September 17, 2021, GE-1 wrote "I'm helping with the [law enforcement agency] side of things" with respect to the case against Company-1, including working on discovery and trial preparation.   GE-1 also explained, in sum and substance, that GE-1 was only able to access information about the Company-1 case in a secure room into which GE-1 could not bring a phone for taking pictures.   GE-1 additionally asked for what purpose HE wanted the information about the Company-1 case, given that GE-1 could get into serious trouble for obtaining it, to which HE responded that it was for his "personal study."   As set forth herein, HE's statement that he was trying to obtain information about the investigation and prosecution of Company-1 for "personal study" was false.

18.   On or about September 21, 2021, GE-1 wrote to HE that "I'm going on site tomorrow and just want to confirm that I should try to find useful information on the criminal investigation, and if I can, about DPA, what DOJ wants, the extradition proceedings, and Commerce sanctions. Correct?"   GE-1 also asked: "With information on the criminal investigation being the most useful to you, yes?"   HE responded: "Yes, waiting for you update!"

19.   On or about and between September 22, 2021, and September 23, 2021, GE-1 wrote to HE that "There's a meeting tomorrow with the [Company-1] prosecution team at the Eastern District of NY.   I'm going.   Is there anything you want me to say in the meeting? Is there anything specific you want me to try to find out?"   HE responded: "just tell me the

memo of the meeting and attendees."   GE-1 subsequently responded that GE-1 did not know all

the attendees, but that the "EDNY prosecution team" and several law enforcement agencies

would be there, including the law enforcement agency for which GE-1 worked.   HE responded:

"It seems a important meeting, waiting for your more details about it, Thank you for your hard

work!"

20.   On or about and between September 26, 2021, and September 27, 2021,

GE-1 provided HE with information about the September 2021 meeting discussed above.   GE-1

stated, in sum and substance, that the focus of the meeting was "trial preparation," including a

discussion of preparing various witnesses for trial.   GE-1 further stated that GE-1 was

responsible for helping to prepare witnesses from GE-1's law enforcement agency.   HE

responded: "I focus on are there some new accusations in this new round charge and what

evidences have they got. I think maybe it will be a little difficult for you to make clear about it,

but, it's very important.   And, the another point is whom of [Company-1] have been examined

by your section?   Can you make a list of this?"   Based on the communications between HE

and GE-1 that I have reviewed, I understand HE's statement to mean that HE sought information

regarding possible new charges to be brought against Company-1 and the evidence supporting

such charges ("are there some new accusations in this new round charge and what evidences

have they got").   GE-1 responded: "Everything about this case is very confidential and we are

only given information on a 'need-to-know' basis, so getting a lot of details about the litigation

strategy will be difficult.   We haven't even gotten the list of [law enforcement agency]

witnesses from EDNY yet.   It's so sensitive that they are going to email it on a classified

computer that can only be accessed from the office."   HE responded: "ok, waiting for you can

get something from office, please just see with your eyes and remember with your brain, and if possible, use another phone [to take pictures] send to me as possible."

21.     On or about and between September 30, 2021, and October 1, 2021, GE-1 and HE exchanged multiple messages.   In one message, HE asked: "How about the [Company-1] case now?   I wonder will the DOJ put forward a plea bargaining and what will be the specific offers?" and "When will be next meeting?   And, did you get the witness list now?"   GE-1 responded: "I think the next meeting at EDNY is Wednesday.   I don't know about the witness list yet.   I have t been able to get to the classified computer where they will send it and I haven't heard anything about it, but I might try to got into the office where the computer is after the meeting in Brooklyn."

22.     On or about and between October 5, 2021, and October 6, 2021, HE and GE-1 further discussed obtaining non-public information related to the Company-1 case.   GE-1 wrote: "the meeting is confirmed for tomorrow.   It's going to be mainly about trial preparation. They might talk about the criminal investigation though."   GE-1 also asked: "Is there anything you want me to mention or ask about besides the witness list?"   HE responded that he wanted information about the government's witnesses as well as the focus of the government's present investigation: "[Y]es, except the list, the direct and point of investigation, and the evidence what they have got are we focus on of cause."   GE-1 wrote back: "Just letting you know the meeting was postponed to next week. I will keep you updated."

23.     On or about October 14, 2021, HE wrote GE-1: "So, how about the meeting?"   In response, GE-1 and HE exchanged the following communications:

> [GE-1]: The meeting, as predicted, was mainly about trial strategy, witnesses prep, etc.

[GE-1]: I was able to see the witness lists.   Not only the [GE-1's agency] list but I also saw that there was a list of [Company-1] employees that have been or will be interviewed and who might be called as witnesses at the trial based on their interviews.

[GE-1]: I don't know that this list of employees is useful to you, but it would certainly help [Company-1] with its defense.

[GE-1]: I can't obviously memorize a whole list, so are there any [Company-1] names that the company would want me to look for?

[GE-1]: I could probably look for 2 or 3 the next time I get to look at the list.

. . .

[HE]: Woo, your are so busy, please take care of yourself!   list is obviously meaningful to me of cause, but we need details, the name in the list, whole is the best, if you just got a part, what ever [GE-1's agency] or other department, especially [Company-1], it's also good.   In the other hand, the strategy of trail is also very important, the schedule of trail, the direct of investigation and the prosecution point, anyway, can you give me more details?

24.     On or about and between October 15, 2021, and October 18, 2021, HE

renewed his request for the identities of the government's witnesses:

[GE-1]: Also, the list of [Company-1] names is long and there is no way I could remember all those names. And it's impossible to take a picture.   They don't even allow phones in the meeting.

[GE-1]: Plus, im sorry to say this, but it's a little hard for me to remember the names in Chinese.

[GE-1]: If [Company-1] has some names they would specifically like me to look for, I could do that.   A few names.   Like no more than 3. . . .

. . .

[GE-1]: They also discussed at the meeting that there are cooperative witnesses. These are secret witnesses that EDNY hasn't disclosed yet to the [Company-1] attorneys.   The judge has protected their identities.

[HE]: Sorry to make you confused.   I just wanna you be safe.   And, is it possible that you write down some names of [Company-1] witness when you see the list next time?   Actually, I have no authority to know the persons of [Company-1] focus on, I just supply the information and suggestions.

13

[HE]: Just few names or their titles are good.    And, how about witnesses of [GE-1's agency], I think you know the details of this, right?    I think it's also meaningful to me.

[HE]: As for reward, I am trying some ways, hope it will be works some days later.

25.    Based on my training and experience, and my participation in this investigation, I assess that, in saying that he lacked authority to provide specific taskings as to Company-1 ("Actually, I have no authority to know the persons of [Company-1] focus on, I just supply the information and suggestions."), HE was admitting that he was not, in fact, interested in the information for "personal study," but rather was receiving directives from his supervisors.

26.    On or about October 29, 2021, GE-1 wrote to the defendant HE: "Just left latest meeting at EDNY.    I managed to get a page from the legal strategy memo."    GE-1 attached a photograph of a page marked "(SECRET//NOFORN)," "READ AND RETURN ONLY," "CONFIDENTIAL ATTORNEY WORK PRODUCT" and "DO NOT DISSEMINATE OUTSIDE OF EASTERN DISTRICT OF NEW YORK."    The page purported to be page eight of a 27-page document, and discussed plans to arrest two Company-1 employees located in the PRC.    GE-1 then wrote: "I think this will help [Company-1] defend their case. I hope you find it useful." and "It talks about EDNY wanting to arrest [Company-1] employees."    Notably, the banner "SECRET//NOFORN" indicates that the document is classified at the "SECRET" level and is not to be disseminated to foreign audiences.    As noted above in footnote 4, the document was not, in fact, classified.

27.    Before responding, HE deleted the message containing the "legal strategy memo."    HE then wrote to GE-1 that: "It [the memorandum] is exactly what I am waiting for, of cause it's useful, please waiting for my further information."    GE-1 replied: "If you or

14

[Company-1] have any questions or need me to explain anything about that page or the document it went with, let me know."   With respect to GE-1's offer to discuss the trial strategy document, HE replied: "Let's waiting for the feedback from some guys."   HE also told GE-1: "If you can get all the [trial strategy] document, it's obviously excellent!"   Based on my training and experience, and my participation in this investigation, I assess that HE's comment that he would wait for "feedback from some guys" indicated that he was sharing the purportedly "SECRET" document with other individuals to evaluate the significance of the trial-related information contained in the document.

28.     On or about November 1, 2021, HE responded to GE-1: "Yes, of cause your safe it's the most important issue that I focus on, so even I can't talk more about this to [Company-1] directly since there some corporation witnesses in it as you mentioned.   Anyway, thank you for your work hard and kindly help."   Before sending that message, HE deleted all previous messages between himself and GE-1.   Based upon my training and experience, and my participation in this investigation, HE's statement that he could not "talk more about this to [Company-1] directly" indicates that he had previously discussed with Company-1 employees his efforts to obtain information about Company-1 but that he would not do so further with respect to this specific document.

29.     During the same conversation, HE also stated: "As for reward, can you accept Bitcoin?   It is easy to handle and safe to give you, but if you don't know it, it's a little trouble to turn it to cash."   In the context of the conversation, HE's reference to "safe" meant that the provision of Bitcoin by HE to GE-1 would be difficult to trace by the government.

30.     On or about and between November 2, 2021, and November 3, 2021, HE and GE-1 exchanged messages in which HE offered to pay GE-1 between $20,000 and $30,000

for that page from the trial strategy memorandum.    As of the date of that offer, HE had paid

GE-1 a total of approximately $14,000 for all of GE-1's efforts on behalf of the PRC government

from approximately February 2017 to October 2021.    Thus, HE was offering to pay GE-1

approximately twice the amount for a single page related to the criminal prosecution of

Company-1 than HE had paid for all of GE-1's previous work, reflecting the document's

perceived value to HE and his superiors.    Moreover, based upon the foregoing, HE's statement

that he would "keep the details of information resources for only myself" is consistent with his

prior statement to GE-1 that HE would not further discuss his source for obtaining the document

with Company-1 employees.

       31.    On or about November 5, 2021, HE and GE-1 exchanged a series of

messages.    During that conversation, GE-1 brought up the page GE-1 had obtained from the

trial strategy memorandum and wrote: "I'm sure your boss and [Company-1] were very pleased

to read it."    HE responded that he "obviously know how valuable the last page it is, let me talk

to my boss again next Monday, will give you feedback soon."

       32.    On or about and between November 14, 2021, and November 15, 2021,

GE-1 and HE exchanged messages in which GE-1 asked, in sum and substance, for an update

about being paid for his/her work in Bitcoin.    HE responded that he would "try my best to get

40 thousands this time, but it's just part of the budget, it will be more in future."    With respect

to converting the Bitcoin payment to cash, HE wrote: "I suggest you do it in gambling house, I

know in some house of Las Vegas can make it, it will be private and safe.    Please waiting for

my further information."

       33.    On or about and between November 16, 2021, and November 17, 2021,

GE-1 and HE exchanged the following messages:

[GE-1]: There's another meeting coming up, but I need more guidance from you or [Company-1] on what to get.   Last time I saw a page from the same strategy document that discussed how the government might take legal actions related to [Company-1] employees who are here in the US.   Is that some thing that would be helpful to [Company-1]?   If not, please tell me what I should be looking for.

[HE]: I agree with you, [Company-1] obviously will interested in it and maybe will offer more, the point is how to do this issue with them, let me think and try it.

. . .

[HE]: When will the next meeting?   I think the operation details and list just aim to employees of [Company-1] in US are obviously important, and the names of corporation witnesses intel [Company-1] are more important, can you get it?

[GE-1]: Thank you for trying to get [Company-1] on board to offer more compensation.   I appreciate what you're trying to do for me.   I will figure out how to create a [Bitcoin] wallet.   The meeting is Tuesday.   I'll see what I can do.

As discussed below, HE later clarified that, in asking for "corporation witnesses intel," he was actually seeking information regarding the government's cooperating witnesses against Company-1.

34.     On or about and between November 19, 2021, and November 20, 2021, while in the Eastern District of New York, GE-1 received 0.70060163 Bitcoin in a specific Bitcoin wallet he/she had identified to HE.   Based on prevailing exchange rates, that amount of Bitcoin was equivalent to approximately $41,000 dollars.

35.     On or about and between November 19, 2021, and November 22, 2021, after HE had paid GE-1 approximately $41,000, GE-1 thanked HE for the payment.   In response, HE wrote: "I am happy you are satisfied with it, and yes, [Company-1] didn't give me specifically feedback now yet, but they are obviously interested in it, and my boss and they need further information, so waiting for more details about your tomorrow meeting, but please remember, your safe is the most important issue, please take care of yourself."   In addition, GE-

17

1 asked HE to clarify what he meant by "corporation witnesses" in his prior statement that "I think the operation details and list just aim to employees of [Company-1] in US are obviously important, and the names of corporation witnesses intel [Company-1] are more important."   HE responded: "Oh, maybe I typed a wrong word, I meant the cooperation witnesses list of [Company-1] as you mentioned."   In other words, HE asked GE-1 to obtain the list of "cooperating witnesses" related to the criminal prosecution of Company-1.

36.    On or about and between December 2, 2021, and December 3, 2021, GE-1 informed HE that he/she would attend another meeting related to the criminal prosecution of Company-1 the next week and that GE-1 would "see what information about witnesses I can safely get."

37.    On or about and between December 3, 2021, and December 7, 2021, GE-1 asked HE: "[Y]ou were waiting for some feedback from [Company-1] on that witness page I got you. Did they give any feedback on that page or what they want me to get?"   HE responded: "Nope, they didn't give me any positive feedback yet, and demanded to communicate with you directly, I refused it, it's too dangerous."

38.    In that same conversation, HE also wrote: "I think what you did is more important and more meaningful to the healthy Sino-US relationship than to the profit of a corporation, and please don't worry, I will try my best to guarantee your reward that you deserved."   In other words, HE indicated that he did not want GE-1 to speak directly with Company-1 (which had apparently sought to communicate directly with GE-1) and would arrange for GE-1 to be paid anyway.   In response, GE-1 thanked HE and subsequently wrote: "I agree that this case is a huge distraction and helping you and [Company-1] end it will only help smooth the path to better relations."   HE did not respond.

18

39.     On or about December 7, 2021, HE asked GE-1 what had happened at the meeting related to the criminal prosecution of Company-1, and the two then exchanged the following messages:

> [GE-1]: Before we talk about the meeting, can you tell me, what did [Company-1] say they want to talk to me about?
>
> [GE-1]: Should I be worried that if I don't talk to them, they'll stop contributing to my reward?
>
> [GE-1]: I'm just a little surprised they want to talk to me directly.
>
> [HE]: Actually, I don't think it's a good idea that hope for reward from [Company-1] and communicate with them, I guess maybe they worried about maybe will involved the not necessary illegal trouble because it, so they are very prudent about this. Don't worry, I will afford your reward from our budget.

In other words, as indicated above, HE did not want GE-1 to communicate directly with Company-1 about the Company-1 prosecution but reassured him/her that he/she would be paid for his/her efforts.

40.     On December 7, 2021, GE-1 also informed HE that "I got another page of the strategy memo. I think it's what [Company-1] wanted but I just grabbed a page quickly. There's a bunch of cooperating witnesses who know about different things. But the names listed are code names."   GE-1 also asked "Should I send it to you? Are [Company-1] even still interested?"   HE replied: "There are no specific name? Ok, please send it to me, let's estimate."   Thus, HE asked for the document obtained by GE-1 in order to determine how much to pay GE-1 for obtaining it.   GE-1 then sent a photograph of a document marked "(SECRET//NOFORN)," "CONFIDENTIAL ATTORNEY WORK PRODUCT" and "DO NOT DISSEMINATE OUTSIDE OF EASTERN DISTRICT OF NEW YORK."[7]   The document indicated that it was

---

[7]  Similar to the prior document, this document was not actually classified.

page "26 of 27" and included a purported description of plans involving various cooperating

witnesses in the Company-1 prosecution.   On the page, purported cooperating witnesses were

organized by the categories of information each witness was expected to provide.   Each

purported witness was identified only by a code name—the names of classic American film stars

such as Marilyn Monroe and Cary Grant—and the page identified, for each purported witness,

the government attorneys and law enforcement agencies responsible for preparation as well as

the country in which the witness was located.

       41.    On or about and between December 8, 2021, and December 9, 2021, HE

asked GE-1 to obtain the entire 27-page trial strategy memorandum, and GE-1 asked, in sum and

substance, if he/she would receive more payment.

       42.    On or about and between December 18, 2021 and December 20, 2021,

GE-1 and HE exchanged the following messages:

> [GE-1]: I'm just really freaking out over here trying to do this for you and was a little taken back when you asked for the whole document after I went through so much just to get those two pages. This is really stressful.
>
> [GE-1]: There is another meeting next week. I hope you can understand that I don't realistically think i can get the whole document out but should I try to get another page or two? What do you want me to do?
>
> [HE]: Hi, [GE-1], sorry to delay. As we know, the [Company-1] issue obviously is a political issues made by US, we focus on the inner witness list of [Company-1], and what will they do to obtain their witness statements, and the illegal evidence they already got. As the reward, please trust me according what we do for you these years.
>
> [GE-1]: Ok. I trust you have my back. I hope you can understand why I was concerned though. I know you appreciate what I'm doing, I'm just not sure about your boss or [Company-1]. I'll see what I can do at the meeting. I'm concerned about illegal evidence, too. I'll focus on that, the inner witness list (we still don't have actual names, but hopefully they'll release at least our witnesses soon), and how they're going to get the witness statements.

43.     On or about and between December 22, 2021, and December 25, 2021,

GE-1 and HE exchanged the following messages:

> [GE-1]: So the meeting is tomorrow.   I'll try my best to get you info on the
> things you asked for. Not sure if it got lost in translation, but by illegal evidence
> do you mean Brady, Giglio, or Jencks material?
>
> . . .
>
> [HE]: I mean the illegal evidence of [Company-1] that have been taken by
> procurators.

Based upon my training and experience, and my participation in this investigation, HE used the

word "procurators" to refer to the government attorneys prosecuting the criminal case against

Company-1.

44.     On or about and between December 26, 2021, and January 11, 2022, HE

and GE-1 exchanged a series of messages in which GE-1 informed HE that GE-1 had obtained

the entire trial strategy memorandum related to Company-1, as well as a recording of a meeting

with prosecutors.   GE-1 did not accept HE's offer to pay GE-1 an additional $50,000 for that

entire document and recording.

45.     On or about February 23, 2022, HE sent GE-1 a message asking: "And as

for the stuffs of [Company-1], do you keep it yet?"   Based upon the communications between

GE-1 and HE that I have reviewed, as well as my training and experience, I assess that "the

stuffs of [Company-1]" referred to the full trial strategy memorandum and recording of a

meeting with prosecutors that GE-1 had purportedly obtained.   GE-1 subsequently informed HE

that he/she no longer was involved in preparation meetings for the trial of Company-1, and did

not provide the full trial strategy memorandum requested by HE.

46.     HE and WANG since have continued to inquire of GE-1 regarding the

EDNY criminal case against Company-1.   On or about June 6, 2022, HE sent GE-1 a message

21

requesting information regarding a status conference then scheduled for late June 2022 in the

EDNY criminal case.

47.     More recently, on or about September 26, 2022, HE informed GE-1 that

he had "applied [for] some reward for you, how to transfer it to you?   Bitcoin is ok yet?"   After

indicating that Bitcoin would be an acceptable form of payment, GE-1 wrote, "And it makes me

feel glad that your organization appreciates the work I did for them on [Company-1].   I know

you appreciate what I did, but I wasn't feeling the love from you bosses."

48.     On or about September 29, 2022, HE wrote:

> [T]he BTC transfer work is still under progress as we have to make sure any
> potential risks are evaluated, so I guess it will be done untill around October 15.
> And yes, my boss is upset about the material you acquired wasn't exploited fully,
> though your efforts were appreciated.   Actually, my organization already decided
> to give a good reward to you at that time, but we considered that the rewards
> ought to be divided into small amounts and sent by several times for the safety
> purposes.

I assess that, in this communication, HE indicated that his supervisor—likely a reference to a

senior PRC intelligence officer—was disappointed ("my boss is upset about the material you

acquired wasn't exploited fully") either because HE had refused to allow Company-1 to

communicate directly with GE-1 or because HE had not acquired the full trial strategy

memorandum from GE-1.   As summarized above, in or about December 2021, HE had indicated

that Company-1 had "demanded to communicate with you directly, I refused it, it's too

dangerous."   I further assess that HE indicated that his employers had already determined to

further compensate GE-1 for his/her work on the Company-1 matter and to divide the

compensation into multiple payments, the first of which encompassed the payment of

approximately $41,000 in Bitcoin, and the next of which would occur around October 15, 2022

due to operational security reasons.   In the context of the conversation, similarly to HE's

reference in November 2021 to Bitcoin being "safe," HE's reference to "the safety purposes" meant that the provision of Bitcoin by HE to GE-1 would be difficult to trace by the government.

49.     On or about October 17, 2022, HE sent GE-1 a message requesting that GE-1 generate a new Bitcoin wallet in order to receive the Bitcoin payment "for the safety purpose."   HE subsequently wrote to GE-1, "Please take care of yourself, and handle the Bitcoin issues carefully."

50.     On or about October 18, 2022, while in the Eastern District of New York, GE-1 received 1.02554449 Bitcoin in the specific Bitcoin wallet he/she had identified to HE. Based on prevailing exchange rates, that amount of Bitcoin was equivalent to approximately $20,000 dollars.    The same day, HE wrote to GE-1, "Please Check your wallet, did you get it?" GE-1 subsequently confirmed receipt, to which HE responded with an emoji of a hand with fingers making the "OK" sign.   On or about October 20, 2022, HE deleted all previous messages between himself and GE-1.

WHEREFORE your deponent respectfully requests that arrest warrants be issued

for the defendants GUOCHUN HE, also known as "Dong He" or "Jacky He," and ZHENG

WANG, also known as "Zen Wang," so that each may be dealt with according to law.

Thomas M. Ryder
Supervisory Special Agent
Federal Bureau of Investigation

Sworn to before me by telephone
this ___ day of October, 2022

Ramon E. Reyes, Jr.
Digitally signed by Ramon E. Reyes, Jr.
Date: 2022.10.20 20:28:03 -04'00'

THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

24

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   22 MJ 1137 |
| GUOCHUN HE, also known as "Dong He" or "Jacky He" | ) ) ) ) | |
| *Defendant* | | |

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*    GUOCHUN HE, also known as "Dong He" or "Jacky He"                                          ,

who is accused of an offense or violation based on the following document filed with the court:

❏ Indictment    ❏ Superseding Indictment    ❏ Information    ❏ Superseding Information    ☑ Complaint
❏ Probation Violation Petition    ❏ Supervised Release Violation Petition    ❏ Violation Notice    ❏ Order of the Court

This offense is briefly described as follows:

Title 18, United States Code, Section 1512(c)(2)
Title 18, United States Code, Section 1956(a)(2)(A) (two counts)

Date:      10/20/2022

Ramon E. Reyes, Jr.   Digitally signed by Ramon E. Reyes, Jr.
Date: 2022.10.20 20:28:38 -04'00'

*Issuing officer's signature*

City and state:    Brooklyn, New York

Hon. Ramon E. Reyes, Jr., U.S. Magistrate Judge

*Printed name and title*

---

### Return

This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____
at *(city and state)* _____ .

Date: _____

_____
*Arresting officer's signature*

_____
*Printed name and title*

AO 442  (Rev. 11/11)  Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

_____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____          Weight: _____

Sex: _____          Race: _____

Hair: _____          Eyes: _____

Scars, tattoos, other distinguishing marks: _____

_____

History of violence, weapons, drug use: _____

_____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

_____

FBI number: _____

Complete description of auto: _____

_____

Investigative agency and address: _____

_____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

_____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____

_____

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   22 MJ 1137 |
| ZHENG WANG, also known as "Zen Wang" | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   ZHENG WANG, also known as "Zen Wang"                                                     ,
who is accused of an offense or violation based on the following document filed with the court:

❑ Indictment     ❑ Superseding Indictment     ❑ Information     ❑ Superseding Information     ☑ Complaint
❑ Probation Violation Petition     ❑ Supervised Release Violation Petition     ❑ Violation Notice     ❑ Order of the Court

This offense is briefly described as follows:

 Title 18, United States Code, Section 1512(c)(2)

Date:        10/20/2022                                    Ramon E. Reyes, Jr.  Digitally signed by Ramon E. Reyes, Jr.
                                                                                          Date: 2022.10.20 20:29:37 -04'00'
                                                                    *Issuing officer's signature*

City and state:    Brooklyn, New York                    Hon. Ramon E. Reyes, Jr., U.S. Magistrate Judge
                                                                    *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____                                    _____<br>*Arresting officer's signature*<br><br>_____<br>*Printed name and title* |

AO 442  (Rev. 11/11)  Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____     Weight: _____

Sex: _____     Race: _____

Hair: _____     Eyes: _____

Scars, tattoos, other distinguishing marks: _____

History of violence, weapons, drug use: _____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

FBI number: _____

Complete description of auto: _____

Investigative agency and address: _____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____